UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS FREY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:03-cv-1896-DFH-VSS |
| ) | |
| WORKHORSE CUSTOM CHASSIS, LLC, ) | |
| GRAND VEHICLE WORKS HOLDINGS ) | |
| CORPORATION and ANDREW TAITZ, ) | |
| ) | |
| Defendants. ) | |

ENTRY ON POST-VERDICT MOTIONS

Plaintiff Thomas Frey sued his former employers and won a verdict of $225,000 on his claim for breach of a contract to pay him a bonus for his last year of employment and $648,220 on his claim for promissory estoppel. Defendants have moved for judgment as a matter of law. Plaintiff Frey has moved for an award of prejudgment interest. As explained below, the court denies defendants' motion for judgment as a matter of law, and grants in part and denies in part plaintiff's motion for prejudgment interest.

I.    *Judgment as a Matter of Law*

   A.    *Standard*

In ruling on a motion for judgment as a matter of law, the court should review all the evidence in the record but must disregard evidence favorable to the

defendants that the jury was not required to believe. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Davis v. Wisconsin Dep't. of Corrections*, 445 F.3d 971, 975 (7th Cir. 2006) (affirming denial of judgment as a matter of law). The court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. The standard mirrors the standard for summary judgment, *id.*, and the standard gives the jury considerable leeway to exercise its judgment and to draw reasonable inferences from conflicting evidence. After the jury has rendered its verdict, the court's job is "not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict." *Harvey v. Office of Banks and Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004).

      B.    *Breach of Contract*

Plaintiff Frey claimed that defendants promised to pay him a bonus at least equal to his annual salary if Workhorse Custom Chassis exceeded an agreed target for "EBITDA" (earnings before interest, taxes, depreciation, and amortization) for calendar year 2002. The agreed target was $39.1 million. Defendants argue that they are entitled to judgment as a matter of law because Frey failed to prove that the EBITDA exceeded $39.1 million. Defendants presented evidence that the company's EBITDA for 2002 was only $37,595,511, based on audited financial statements that were completed late and many months after Frey left the company.

Frey came forward with circumstantial evidence sufficient to support a reasonable inference that Workhorse actually met the target. Frey testified that when he left the company in January 2003, the calculations of EBITDA for 2002 were "about $39 million." Under the terms of the oral contract, close would not count. That evidence would not be enough by itself to support the verdict, but Frey also relies on testimony from Andrew Taitz and Michael Dost, and the silence in key documents.

When Frey asked Taitz to pay the 2002 bonus in the spring of 2003, Taitz responded with a letter stating that Frey was not eligible for the bonus because he was no longer employed with the company. Exs. 100 and 101. Taitz did not say that Frey was not entitled to the bonus because the company had missed the EBITDA target. That silence tends to support an inference that Taitz had information indicating that the company had in fact met the target.

The company's handling of its financial statements also showed some unusual circumstances. Dost testified that the audited financial statements for Workhorse showed 2002 EBITDA of $37,595,511. The audited number, based on information provided by defendants themselves, is not evidence the jury was required to accept. See *Reeves*, 530 U.S. at 150 ("court should give credence to the evidence favoring . . . the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses"). Dost also acknowledged that the 2002 report was the subject of

unusual delays totaling about ten months and that the EBITDA figure had a margin of error of up to five percent. A five percent increase above the reported number would be high enough to reach the target needed for the bonus.

Frey also presented evidence showing that Workhorse and Taitz had a substantial incentive to understate the 2002 EBITDA. Many employees would have received very substantial bonuses if the target was in fact met. Frey also presented evidence that could easily allow the jury to disbelieve any testimony from Taitz and Dost that benefitted the defense. See generally *Reeves*, 530 U.S. at 147 (describing "general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt,'" quoting *Wright v. West*, 505 U.S. 277, 296 (1992)). Frey offered plenty of evidence that Taitz simply was not trustworthy. Dost gave his helpful testimony for the defense, and then swore that Frey had been paid a bonus of tens of thousands of dollars for the company's performance in 2001. On that subject, Frey and even Taitz agreed that no such bonus had ever been paid. The jury was free to discredit virtually any testimony from Taitz and Dost that benefitted the defense.

In light of the generous standard that applies under Rule 50, the motion must be denied on this claim. Although no witness testified directly that the 2002 EBITDA exceeded the $39.1 million target, the jury could reasonably infer from all of the evidence that it was more likely than not that a fair calculation of the

figure would have exceeded the target, so that the company's failure to pay Frey the bonus was a breach of contract.

    C.    *Promissory Estoppel*

The court granted defendants' motion for summary judgment on Frey's claim that they had breached a contract formed when defendants hired him. The court concluded that the alleged promises of a right to share in the equity growth of Workhorse Custom Chassis and other benefits were too vague to be enforced as a matter of contract law. *Frey v. Workhorse Custom Chassis, LLC*, 2006 WL 1750247, *8-9 (S.D. Ind. June 21, 2006). The court found that Frey was entitled to a trial on his claim for reliance damages on a theory of promissory estoppel, based on his claim that he gave up a secure and lucrative job with substantial benefits in order to take the job Taitz offered him with Workhorse.

Indiana law requires five elements for promissory estoppel: (1) a promise (2) made with the expectation that the promisee will rely on it, (3) that induces reasonable reliance by the promisee (4) of a definite and substantial nature, and (5) injustice can be avoided only by enforcing the promise. *Truck City of Gary, Inc. v. Schneider National Leasing*, 814 N.E.2d 273, 279 (Ind. App. 2004); accord, *Jarboe v. Landmark Community Newspapers of Indiana, Inc.*, 644 N.E.2d 118, 121 (Ind. 1994). The jury was instructed accordingly, and it found that Frey was entitled to reliance damages of $648,220. Defendants argue that Frey's evidence failed as a matter of law in several respects.

1.  *Reliance in Fact*

Defendants contend that Frey did not actually rely on Taitz's promises. The evidence showed that after Taitz offered Frey the job at Workhorse in May 1999, Frey sent a letter to his boss, the chief executive officer of SPX Corporation, John Blystone, stating his intention to retire at the end of 1999. (At that time, several valuable employment benefits would have vested for Frey.) Blystone responded by telling Frey that if he was planning on leaving SPX and DeZurik, he would leave immediately. Frey immediately resigned from DeZurik and took up the job with Workhorse, where the compensation and other benefits turned out not to fulfill Taitz's promises.

Defendants contend that the Workhorse job would not have been available to Frey if he had waited until the end of 1999, so that he could not have been relying on Taitz's promises when he proposed to Blystone that he stay at DeZurik until the end of the year. Defendants made that argument to the jury, and it is certainly one reasonable reading of the evidence. Frey was in a rather delicate minuet of negotiations in two directions at once, with Taitz and Workhorse on one side and Blystone and DeZurik on the other. But that is not the only reasonable view of the evidence. Frey testified that Taitz did not make the timing issue a critical one for joining Workhorse. The jury could easily find that Frey relied on Taitz's job offer and promises in taking the dangerous step of telling Blystone that he intended to leave. Frey himself testified that he knew there was a significant risk that immediate departure from DeZurik would result from his letter to

Blystone. The jury could reasonably conclude that Frey would not have taken that risk but for his reliance on Taitz's promises.

In short, the jury could reasonably find that Frey relied in fact on Taitz's promises in leaving his job at DeZurik.

### 2.     *Reliance Damages and Set-Off*

The court instructed the jury that any damage award for promissory estoppel should not be based on enforcement of the promises made (expectation damages) but should be limited to reliance damages: "expenses or losses that Mr. Frey suffered because he relied on the promise, and that were not otherwise paid for." Court Instruction No. 18. Defendants argue that Frey suffered no reliance damages because he reached a severance agreement with SPX and DeZurik that provided for payment of his salary for one year in exchange for a complete release of claims against them, including some retirement benefits, bonus programs, and stock options that were the subject of Frey's discussions with Taitz about compensation at Workhorse and that were used to measure the benefits Frey gave up by relying on Taitz's promises.

In a rather opaque argument, defendants contend that they benefit from Frey's severance agreement with SPX and DeZurik. Defendants deny that they are arguing they are third party beneficiaries of that agreement, but that seems to be the theory. Or perhaps they are arguing a rough parallel of the old rule that a

release of one party amounts to a release of claims against another party for the same loss. They did not cite any applicable law to support the argument, whatever the theory was. In any event, the fact that Frey was able to negotiate the severance package and released arguable claims he might have had against SPX and DeZurik at the time of his departure did not amount to a waiver or release of his later claims against the defendants in this case. Frey and SPX/DeZurik agreed upon and executed the severance package before Frey's claims against defendants even arose. It would be very odd if that agreement served to release defendants from the consequences of Taitz's false promises.

Defendants argue in the alternative that they are entitled at least to a $200,000 set-off to give them credit for the severance package. The record indicates that defendants already received that credit. The court instructed the jury that "any award of damages should put Mr. Frey in the financial position he would have been if the promise had never been made in the first place." Court Instruction No. 18. To do that calculation, the jury was required to subtract the money that Frey received from SPX/DeZurik because he relied on Taitz's promises. That is exactly what Frey argued to the jury. His counsel argued to the jury that they should subtract $200,000 from whatever amount they would otherwise award for promissory estoppel. Frey had already received the $200,000 in severance benefits that he would not have received if he had not relied on Taitz's false promises.

The jury verdict is consistent with the view that the instructions and Frey's argument already gave defendants the benefit of the requested set-off. Frey argued that he gave up about $200,000 in retirement benefits by leaving DeZurik and SPX when he did. He argued that he gave up stock options worth an estimated $1 million that would have vested at the end of 1999. He argued that he gave up bonus opportunities, as well. The jury's verdict on promissory estoppel is consistent with conclusions that Frey was entitled to (a) a lesser amount on the stock options, plus (b) about $200,000 for the lost retirement benefits, minus (c) about $200,000 as a set-off for the severance package, and (d) that Frey was not likely to have earned a bonus at DeZurik in 1999. Defendants are not entitled to a second or further set-off.

### 3.   *Damages Reasonably Certain*

Defendants argue that the promissory estoppel damage award is not supported because Frey was not reasonably certain to receive the benefit of the SPX stock options if he had stayed at DeZurik/SPX. The jury's verdict of $648,220 is the amount by which the face value of Frey's stock options exceeded the market price of SPX stock on May 11, 1999. Defendants argue that the jury's award failed to take into account the uncertainty and volatility of stock values and the uncertainty as to whether Frey would have received that benefit.

In the court's view, the jury's verdict was a reasonable response to a difficult problem. The jury could easily conclude, in the face of conflicting evidence, that

if Taitz had not made his false promises, Frey would have stayed at DeZurik at least long enough for the stock options to vest, so that it was reasonably certain that Frey would receive some benefit from them.[1]

How much benefit?  Frey argued that the amount was more than a million dollars.  He based this view in part on hindsight and the actual performance of SPX stock, as well as his testimony that he believed he had inside knowledge in May 1999 indicating that SPX stock was undervalued by the market at that time and was likely to rise.  The jury weighed that testimony critically.  (The broader stock market experienced some considerable fluctuation from 1999 until Frey could have exercised the options.)  The jury apparently concluded that a reasonable measure was the face value of the options as of May 11, 1999, without any further adjustment for contingencies or volatility.  That was a reasonable response to the difficult problem of valuation.  Defendants are not entitled to judgment as a matter of law on this question.

---

[1] Defendants tried to prove that Frey was on the verge of being fired for poor performance while he was negotiating with SPX/DeZurik.  The testimony from Blystone and Foreman of SPX proved nothing of the sort.  Blystone remembered that he fired a division president around the relevant time, but he could not say whether it was Frey or not.  His account of circumstances that would indicate he was talking about Frey was contradicted by Foreman's testimony.  The whole confusing subject did not help defendants' case.

    4.  *Reasonable Reliance*

  Defendants argue that Taitz's promises to Frey of equity participation in any increase in the value of Workhorse were too vague for Frey to be able to reasonably rely upon them. As noted above, the court held on summary judgment that the promises were too vague to be enforceable as a matter of contract law. *Frey v. Workhorse Custom Chassis*, 2006 WL 1750247, at *8-9. At the same time, however, Indiana law goes further than the law of other states in allowing claims for promissory estoppel based on promises that are not as clear or specific as contractual promises. See *Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 702-03 (7th Cir. 2004), citing *First National Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 955 (Ind. 1991); *Frey v. Workhorse Custom Chassis*, 2006 WL 1750247, at *10 n.5. Taitz conceded that he made the promises and that he intended for Frey to rely upon them. The jury could reasonably find that Frey relied reasonably on Taitz's promises, at least to the extent that they could be enforced on a theory of promissory estoppel to award reliance damages.

  For all of these reasons, defendants are not entitled to judgment as a matter of law on the claims submitted to the jury. Defendants' motion for judgment as a matter of law and for a further set-off to the jury verdict is denied.

II.     *Prejudgment Interest*

Plaintiff Frey has filed a separate motion asking the court to award prejudgment interest on the sums the jury awarded for breach of contract and for promissory estoppel. The Seventh Circuit provided detailed guidance on the subject in *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591 (7th Cir. 1985), which affirmed an award of prejudgment interest under Indiana law. Plaintiff Simmons sought damages for negligence that resulted in a fire causing extensive property damage to a building and the goods stored there. The jury found for the plaintiff, and the district court awarded prejudgment interest. On appeal the defendant argued that the principal amount was too uncertain and was based on estimates, so as to bar an award of prejudgment interest. The relevant discussion affirming the interest award is quoted here in full:

> Under Indiana law, prejudgment interest is proper when damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time damages accrue, *Rauser v. LTV Electrosystems, Inc.*, 437 F.2d 800 (7th Cir. 1971); *Indiana Industries, Inc. v. Wedge Products, Inc.*, Ind.App., 430 N.E.2d 419, 427 (3d Dist. 1982), but is not appropriate when the jury must use its best judgment to assess the amount for past and future injury or elements not measurable by fixed standards of value. *N.Y., Chicago & St. L. Ry. Co. v. Roper*, 176 Ind. 497, 96 N.E. 468 (1911). Pinkerton's argues that under this test Simmons is not entitled to prejudgment interest, since here there was a bona fide dispute over the amount of damages that should have been awarded for the loss of Simmons' inventory.
>
> The trial judge concluded that "the damages as presented and adopted by the jury in its verdict were a function of mathematical computation involving the subtraction of salvage proceeds from actual and average sales prices for the various inventory items." Dist. Ct. Op. at 35. We do not think the fact that Pinkerton's disputed the use of various sales lists at trial, for example because some price lists were from after the time of the fire, invalidates the claim for prejudgment interest. We do not agree

> with Pinkerton's characterization of Indiana's "fixed and ascertainable" standard as meaning that whenever more than one figure representing damages – in this case the value of inventory – could have been adopted, no prejudgment interest may be awarded. Pinkerton's essential contention that the principal amount of damages must be stipulated, or determinable without trial, is amply refuted by the cases construing Indiana law. In many cases prejudgment interest has been allowed even though the fact finder had to use some degree of judgment in measuring damages. *See, e.g., Luksus v. United Pacific Ins. Co.*, 452 F.2d 207 (7th Cir. 1971) (interest awarded from various dates that sums owed for labor, services, rental of equipment, bonuses, etc. were later found to be due); *N.Y., Chicago & St. L. Ry. Co. v. Roper*, 176 Ind. 497, 96 N.E. 468 (1911) (interest award upheld where measure of damages after fire was fair market value of house); *Indiana Industries, Inc. v. Wedge Products, Inc.*, Ind. App., 430 N.E.2d 419 (3d Dist. 1982) (interest awarded for inventory even though original claim substantially differed from damages subsequently sought, and from those awarded); *N.Y. Central Ry. Co. v. Churchill*, 140 Ind. App. 426, 218 N.E.2d 372 (2d Div. 1966) (interest allowed where fair market value of tractor, though disputed, was easily ascertainable with a degree of certainty); *Kuhn v. Powell*, 61 Ind. App. 131, 111 N.E. 639 (1916) (interest allowed despite dispute over amount due per bushel of corn under unwritten contract). Thus, we interpret Indiana's standard to mean only that damages must be ascertainable as of a particular time (not actually ascertained prior to trial) according to known standards of value (not liquidated amounts). *See Courtesy Enterprises, Inc. v. Richards Labs.*, Ind. App., 457 N.E.2d 572 (3d Dist. 1983). Of course, assessment of the degree to which the jury must use its judgment in ascertaining damages may in close cases be difficult, but we cannot say the district court abused its discretion in deciding that prejudgment interest was appropriate here.

762 F.2d at 607-08; accord, *Public Service Co. of Indiana, Inc. v. Bath Iron Works Corp.*, 773 F.2d 783, 796 (7th Cir. 1985) (reversing denial of prejudgment interest under Indiana law where district court had erroneously concluded "that interest is not includable where damages are unliquidated and cannot be ascertained until judgment").

A.   *Breach of Contract for Bonus Payment*

On the breach of contract claim, the jury verdict amounted to a decision that defendants should have paid Frey $225,000 in approximately March or April 2003, and that they did not do so. The nature of the wrong is one that calls for an award of prejudgment interest to make Frey whole for the breach. Although the amount owed, if any, was in dispute, the jury verdict resolved that question: defendants should have paid Frey a certain sum no later than the end of April 2003. The jury awarded damages that were "ascertainable in accordance with fixed rules of evidence and accepted standards of valuation" at the time the damages accrued. Based on the nature of the claim, Frey is entitled to prejudgment interest of eight (8) percent per annum from April 30, 2003 through the date of judgment, without compounding. See Ind. Code § 24-4.6-1-103 (statutory rate of interest); *Abex Corp. v. Vehling*, 443 N.E.2d 1248, 1260 (Ind. App. 1983) (prejudgment interest is calculated from time the principal amount was demanded or due); *Indiana Telephone Corp. v. Indiana Bell Telephone Co.*, 360 N.E.2d 610, 612-13 (Ind. App. 1977) (interest award not compounded in absence of specific contract provision or evidence of trade custom for compounding of interest).

B.   *Promissory Estoppel Damages*

The promissory estoppel claim presents a different question. The jury found that Frey was entitled to $648,220 on that claim. The core of the claim was that

defendants violated a (non-contractual) promise to Frey to give him a form of equity participation in defendant Workhorse.  Frey's reliance was to give up the job he then held, including some valuable benefits, such as stock options.  Frey was entitled not to the benefit of the alleged promise but to reliance damages.  On the issue of Frey's reliance damages, the evidence was sharply disputed, and the jury had to use equitable discretion to fashion a fair award.  Final Instruction No. 18 told the jury in part: "Overall, in determining any amount of damages to award on this claim, your task is to award an amount needed to do justice for both sides."

The number the jury chose is not random.  It is the difference between the market price and the strike price on Frey's stock options at the time he left DeZurik.  That is not a simple measure of reliance damages, however.  Even at that time, Frey's stock options had not yet vested and were subject to several important contingencies.  Also, Frey had colorable claims for additional forms of reliance damages, and the jury needed to set-off the amount Frey received in his severance package, as explained above.  The extent of the need for the jury to exercise judgment and equitable discretion as to these various elements weighs against an award of prejudgment interest on this portion of the verdict.

In *D&G Stout, Inc. v. Bacardi Imports, Inc.*, 805 F. Supp. 1434 (N.D. Ind. 1992), Judge Miller applied Indiana law on prejudgment interest to a promissory estoppel damages award.  The plaintiff was a liquor wholesaler that recovered

promissory estoppel damages from a liquor manufacturer. Plaintiff had turned down a firm offer to buy its assets, and did so in reliance upon promises from the manufacturer. When the manufacturer broke its promises, the plaintiff accepted a lower offer for all its assets. Judge Miller applied the standard that prejudgment interest was proper "when damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the damages accrue, but is not appropriate when the trier of fact must use its best judgment to assess the amount of damages." 805 F. Supp. at 1452, quoting *Dale R. Horning Co. v. Falconer Glass Industries, Inc.*, 730 F. Supp. 962, 969 (S.D. Ind. 1990), citing in turn *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d at 607.

Judge Miller awarded prejudgment interest for reliance damages that were measured by the difference between the two offers to purchase the plaintiff's inventory, receivables, and real estate. Those values were determined by straightforward mathematical calculations and did not require the exercise of judgment in determining the amounts. 805 F. Supp. at 1452. Judge Miller declined to award prejudgment interest for other categories of reliance damages, for the value of office furniture, merchandise, automobiles, and delivery equipment. In determining the damages for those assets, he was required to exercise judgment and evaluate expert opinions. Because he was required to exercise judgment rather than merely apply an ascertainable standard, he declined to award prejudgment interest on those items. *Id.*

That reasoning applies to the promissory estoppel award in this case. The jury had to exercise its judgment in determining the amount to award on the claim for promissory estoppel. The jury could not merely carry out a simple mathematical calculation or even choose a value for a key variable in a formula. Cf. *Indiana Bell Telephone Co. v. Thrifty Call, Inc.*, 2005 WL 552260, *2-3 (S.D. Ind. Feb. 11, 2005) (awarding prejudgment interest on fraud claim where jury was required to choose value for minutes of telephone usage to calculate damage). Valuing the benefits that Frey gave up by relying on Taitz's false promises required the jury to exercise its judgment and equitable discretion in a way that does not seem to be consistent with Indiana's requirements for an award of prejudgment interest. To illustrate the point, from what time should an award of prejudgment interest be calculated? Unlike the breach of contract claim, the elements of the promissory estoppel award did not involve payments that he made at specific times (as with out-of-pocket payments) or payments that he was due to receive at particular times. Accordingly, the court finds that an award of prejudgment interest is not warranted on the claim for promissory estoppel.

*Conclusion*

Defendants' motion for judgment as a matter of law is denied, including the alternative request for a set-off. Plaintiff's motion for an award of prejudgment interest is granted in part and denied in part. The court will enter a final judgment consistent with the verdict and this entry.

So ordered.

Date:  January 24, 2007

*David F. Hamilton*

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Brenda Marie Allison
HORWOOD MARCUS & BERK CHARTERED
ballison@hmblaw.com

Irving L. Fink
YOSHA KRAHULIK & LEVY
iprince5@hotmail.com

Stacy A. Hinners
Christian A. Jenkins
MEZIBOV & JENKINS LLP
cjenkins@mezibovjenkins.com

Marc D. Mezibov
MEZIBOV & JENKINS
mmezibov@mezibovjenkins.com

James H. Ryan
HORWOOD MACUS & BERK CHARTERED
jryan@hmblaw.com

Robert J. Schuckit
SCHUCKIT & ASSOCIATES, P.C.
rschuckit@schuckitlaw.com

Hal J. Wood
HORWOOD MARCUS & BERK CHARTERED
hwood@hmblaw.com